**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**ANDREW W. DUNLAP,**

    **Plaintiff,**

    v.

**KARIN NIELSEN, ET AL.,**

    **Defendants.**

Case No. 16-CV-2400-JAR-TJJ

**MEMORANDUM AND ORDER**

Plaintiff filed this breach of contract and promissory estoppel action, alleging Defendants Karin Nielsen, the Estate of Tyghe Nielsen (the "Estate"), and Nielsen Capital Finance, LLC ("NCF") refused to pay amounts due on two promissory notes signed by Tyghe and Karen Nielsen, in their individual capacities, and/or as members of NCF. Before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 40). The motion is fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants Defendants summary judgment as to the promissory estoppel claim, but denies the same as to the breach of contract claims.

**I.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[1] In applying this standard, the Court views the evidence and all reasonable inferences therefrom

---

[1] Fed. R. Civ. P. 56(a).

1

in the light most favorable to the nonmoving party.[2]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[3]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[7]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must "set forth specific facts that would be

---

[2] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[4] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8] *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9] *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10] In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[11] To successfully oppose summary judgment, the nonmovant must bring forward more than a mere scintilla of evidence in support of his position.[12] A nonmovant may not create a genuine issue of material fact with unsupported, conclusory allegations."[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

## II.    UNCONTROVERTED FACTS[15]

As an initial matter, Plaintiff has failed to comply with several local rules. First, she failed to properly controvert Defendants' statement of uncontroverted facts as required by D. Kan. Rule 56.1. In this district, the general practice is for the nonmovant to state for each numbered statement whether the fact is controverted or uncontroverted. Plaintiff ignored Defendants' statement of uncontroverted facts and asserted her own. As a result, Plaintiff has failed to comply with the portion of the local rule that requires identifying the number of movant's fact that is disputed.[16] Additionally, many of Plaintiff's statements of uncontroverted

---

[10] *Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[11] *Adler*, 144 F.3d at 671.

[12] *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993).

[13] *Tapia v. City of Albuquerque*, 170 F. App'x. 529, 533 (10th Cir. 2006).

[14] *Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] For convenience, the Court will henceforth refer to the Nielsens individually by their first names.

[16] D. Kan. Rule 56.1(b)(1) ("Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.")

facts were inconcise or incorrect, contrary to D. Kan. Rule 56.1(b)(2).[17] For example, in paragraphs 4, 5, 11, and 12, Plaintiff stated that Karin did not deny signing and executing the loan documents until she asserted her First Affirmative Defense, but she did specifically deny signing any of those documents in her Answer.[18] Plaintiff has also improperly filed a surreply.[19] Surreplies are not contemplated by D. Kan. Rule 7.1(c), they are rare, and only allowed with leave of court.[20] Plaintiff did not seek leave before filing her surreply.

For these rule violations, Defendants request the Court deem their statement of uncontroverted facts as admitted pursuant to D. Kan. R. 56.1(a).[21] They also filed a motion to strike the surreply.[22] Plaintiff filed no response to the motion to strike and the time for doing so has expired. Because the Court concludes partial summary judgment should be granted even after considering the surreply, the Court denies the motion to strike as moot.

Although burdensome, the Court will not deem all of movants' facts uncontroverted and will keep in mind the applicable summary judgment standards in determining the facts for purposes of this motion. The following material facts are either uncontroverted or, if controverted, are construed in the light most favorable to Plaintiff.

Tyghe and Karin Nielsen were married for over nine years preceding his death. Around 2009, Tyghe was diagnosed with cancer. By 2012, Tyghe was unable to work at his occupation as a physician. Around September 17, 2013, Tyghe formed NCF, with him as its sole member.

---

[17] D. Kan. Rule 56.1(b)(2) ("If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above.").

[18] Doc. 18, ¶ 9 at 2.

[19] Doc. 51.

[20] *King v. Knoll*, 399 F. Supp. 2d 1169, 1174 (D. Kan. 2005).

[21] Doc. 48 at 1.

[22] Doc. 52.

On or about October 28, 2014, Plaintiff Alex Dunlap loaned $150,000 to NCF. Plaintiff produced four documents memorializing this loan: 1) the Promissory Note – On Demand (the "Promissory Note"), 2) the Loan Agreement, 3) the Loan Summary, and 4) the canceled check made payable to NCF. The Promissory Note stated in pertinent part:

> FOR VALUE RECEIVED, the undersigned, Tyghe and Karin Nielsen and Nielsen Capital Finance, LLC (Borrowers) . . . promises to pay to the order of Alex Dunlap (Lender), the principal sum of $150,000 (Principal). The borrower also promises to pay 20 percentage points per annum pro rated over a term of up to one year unless agreed upon otherwise by both parties. Contract is renewable every 60 days from 10/28/2014. The entire unpaid Principal and any accrued interest shall be immediately payable UPON DEMAND of any holder of this note, but not sooner than thirty (30) days from execution of this note.[23]

The second page of the Promissory Note contained two signatures, one was Tyghe's and the other appeared to be Karin's:[24]

_____          _____
Tyghe Nielsen                                              Karin Nielsen

(Signature of Borrowers)

The Loan Agreement stated it was "made and entered into . . . by and between Nielsen Finance Company ("Borrower") and Alex Dunlap ("Lender")."[25] On page 9 of the Loan Agreement, the signature block was as follows:

---

[23] Doc. 42-2 at 1.

[24] *Id.* at 2.

[25] Doc. 42-3 at 1.

5

**BORROWER:**

Nielsen Capital Finance

By: _____
Name:  Tyghe Nielsen
Title:  President

Attached to the Loan Agreement was a document entitled "Loan Summary." It indicated Tyghe and Karin Nielsen guaranteed the loan and contained the following signatures, one was Tyghe's and the other appeared to be Karin's:

Signature by Guarantor: _____ + Karin Nielsen

Signature by Lender: _____

On or about November 27, 2014, Plaintiff made a $50,000 loan to NCF.[26] This second loan was memorialized in a loan agreement back-dated October 28, 2014, with an incorrect stated loan amount of $150,000 (the "Second Loan Agreement").[27] The loan summary attached to this agreement, however, indicated that the maximum loan amount was $50,000, the default rate was 20% per annum, and the loan was guaranteed by Tyghe and Karen Nielsen (the "Second Loan Summary").[28] The Second Loan Agreement was signed by Tyghe as President of NCF. The Second Loan Summary contained the following signatures, one was Tyghe's and the other appeared to be Karin's:

---

[26] This loan was comprised of a $40,000 check made payable to Tyghe on or about July 8, 2013, accrued, unpaid interest in the amount of $8,875, and a second check in the amount of $1,125 dated November 27, 2014. Doc. 1 at 4446.

[27] Doc. 42-4 at 12.

[28] *Id.* at 10.

6

Signature by Guarantor: _____ + _Karin Nilen_

Signature by Lender: _____

Tyghe died on December 3, 2015. On May 24, 2016, Dustin Wiemers, a resident of Dallas County, Iowa, filed a Petition for Appointment of Special Administrator for the Estate of Tyghe Nielsen in the District Court of Miami County, Kansas, Probate Section under case number 2016-PR-000046 (the "Probate Case"). On the same day, the Probate Court appointed Karla Kerschen Shepard as the Special Administrator.[29]

Notice of the May 24, 2016 Petition was published in the *Kansas City Star* beginning June 2, 2016 and ending June 16, 2016, and in the *Miami County Republic* beginning June 8, 2016 and ending June 22, 2016. Both notices to creditors stated:

> You are hereby notified that on May 24, 2016, a Petition for Issuance of Letters of Administration was filed in this Court by Dustin Wiemers, one of the plaintiffs in a civil case against Tyghe Nielsen, deceased, who has a claim against Tyghe Nielsen and, therefore, has an interest in the estate as a creditor, praying for issuance of Letters of Administration to Karla Kerschen Shepard as Special Administrator.
>
> All creditors of the decedent are notified to exhibit their demands against the Estate within the later of four months from the date of first publication of notice under K.S.A. 59-2236 and amendments thereto, or if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given as provided by law, and if their demands are not thus exhibited, they shall be forever barred.[30]

On June 3, 2016, Karin recorded the Last Will and Testament of Tyghe Lindberg Nielsen ("Tyghe's Will") in the Probate Case. On July 14, 2016, the Probate Court admitted Tyghe's Will and appointed Karin as substitute Executor. Tyghe's Will expressly states that it "shall not

---

[29] Doc. 48-2 at 1–3.
[30] Docs. 42-5 and 42-6.

7

extend the statute of limitations for payments of debts, or enlarge upon my legal obligation or any statutory duty to pay debts."[31]

**III.    Analysis**

Defendants seek partial summary judgment on three grounds: 1) Karin is entitled to judgment on the breach of contract claim because she was not a party to any contract with Plaintiff; 2) the claims against the Estate are barred by K.S.A. § 59-2239; and 3) the promissory estoppel claim fails for lack of reasonable reliance.  Plaintiff argues that summary judgment is inappropriate because genuine issues of material fact exist regarding: 1) whether Karin's signatures were forged or unauthorized; 2) whether Kansas's nonclaim period was ever triggered; and 3) whether Plaintiff reasonably relied upon Tyghe's promises.  The Court addresses each issue in turn.

**A.   Breach of Contract Claim Against Karin**

Karin argues that she is entitled to summary judgment on the breach of contract claim because she was not a party to any contract with Plaintiff.  In support, Karin submitted an affidavit, declaring that: 1) the signatures on the Note and the loan agreements were not made by her or with her knowledge or consent; and 2) she had no knowledge of these documents at the time they were purportedly made and did not approve or consent to them.[32]  Plaintiff counters that signatures are presumed valid in Kansas pursuant to K.S.A. § 84-3-308 and that Karin's self-serving affidavit, alone, does not overcome this presumption nor shift the burden of authenticating her signature to Plaintiff.

K.S.A. § 84-3-308 (West) states:

---

[31] Doc. 42-8 at 12.

[32] Declaration of Karin Nielsen, Doc. 42-1 ¶¶ 9, 10, 15, 16, 21, and 22.

> (a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.  If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under K.S.A. 84-3-402(a).

In her answer, Karin specifically denied signing any of the loan documents or knowledge of them.[33]  Accordingly, the burden of establishing the validity of Karin's purported signatures is on Plaintiff.  Nonetheless, the signature is presumed authentic and authorized unless the action is to enforce the liability against a dead or incompetent signor.  Karin is alive and the action is to enforce the validity of her signature, so the presumption applies.

The Court finds Karin's argument that her affidavit overcomes the presumption unpersuasive.  While Karin's testimony as to her own signature is competent and admissible, "whether the presumption of validity actually is rebutted is an issue for the fact finder at trial."[34]  A reasonable fact finder could find the presumption outweighs Karin's testimony if they found Karin unbelievable.[35]  Under these circumstances, the Court concludes that summary judgment on the breach of contract claim against Karin is inappropriate.  The presumption is enough to raise a genuine issue of material fact as to the authenticity of Karin's signature.[36]

---

[33] Doc. 18, ¶¶ 9, 19, 29, 32, and First Affirmative Defense.

[34] *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.*, No. 01 CIV. 4788, 2006 WL 587483, at *20 (S.D.N.Y. Mar. 8, 2006) (collecting cases holding that summary judgment is inappropriate where issue of authenticity of signature is in dispute).

[35] *Davis v. Greenpoint Mortg. Funding, Inc.*, No. 1:09-CV-2719-CC-LTW, 2013 WL 12239135, at *4 (N.D. Ga. Feb. 13, 2013), report and recommendation adopted, No. 1:09-CV-2719-CC-LTW, 2013 WL 12239134 (N.D. Ga. Mar. 5, 2013) (concluding summary judgment not warranted because a reasonable factfinder could still find the signed acknowledgment form more credible than the plaintiff's testimony).

[36] *Davis*, 2013 WL 12239135 at *4.

### B. Claims Against the Estate

Defendants argue that all claims against the Estate are barred because Plaintiff did not file a claim in the Probate Case before the nonclaim period expired. Kansas' nonclaim statute provides:

> (1) All demands . . . against a decedent's estate . . . including any demand arising . . . on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, shall be forever barred from payment unless the demand is presented within the later of: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control.[37]

Defendants contend: 1) October 2, 2016 marked four months after the first publication of notice in the *Kansas City Star*; 2) October 8, 2016 marked four months after the first publication of notice in the *Miami County Republic*; and 3) Plaintiff received actual notice no later than on February 13, 2017, when Defendants provided him with a copy of the published Notices to Creditors. And because Plaintiff has not filed a claim against the Estate in the Probate Case within 30 days of February 13, 2017, Defendants argue that all claims against the Estate are barred, entitling it to summary judgment.

Plaintiff rejoins that the time for a creditor to file a claim against the Estate has not commenced because Karin did not publish any notice after she was appointed the Estate's Executor. He argues "the plain language of K.S.A. § 59-709 clearly requires [the Estate's Executor to] publish a separate notice to creditors pursuant to K.S.A. § 59-2236."[38] He maintains the Notice to Creditors published by Dustin Wiemers was premature and ineffective

---

[37] K.S.A. § 59-2239.

[38] Doc. 47 at 13.

10

because it was not "pursuant to an order of the court" as required by K.S.A. § 59-709.[39] Plaintiff also says the thirty days from receiving actual notice is still an undetermined date because he never received actual notice.[40]

Contrary to Plaintiff's assertion, K.S.A. § 59-709(a) does not say that an estate's executor must give notice to creditors. It says that "[e]very petitioner who files a petition for administration . . . shall give notice to creditor." Thus, Kansas law requires the petitioner to publish notice to creditors. Wiemers was the petitioner who filed the petition for administration. The Court rejects Plaintiff's argument that Wiemers' notice publication was premature and ineffective because the Probate Court never entered an order appointing Karla Kerschan Shepard as the Special Administrator. The Probate Court, however, appointed Shepard as the Special Administrator on May 24, 2016.[41] The Court also rejects the argument that Wiemers' publication was not "pursuant to a court order." Nothing in § 59-709 explicitly calls for a written order directing publication, especially when the publication procedures are set forth in the statute. Moreover, the third sentence of § 59-709(a) supports finding Karin was not required to publish notice to creditors. That sentence provides: "[a] petitioner for the appointment of a successor administrator . . . shall publish notice to creditors only in the event the original petitioner for administration or for the probate of a will had failed to give such notice."[42] Wiemers, the original petitioner for administration, provided notice, thus Karin was relieved of

---

[39] *Id*. at 12.

[40] *Id*. at 13.

[41] Doc. 48-2 at 1–3.

[42] K.S.A. § 59-709(a).

the duty to publish notice to creditors. The subsection (a)-nonclaim period thus expired on October 3, 2016.[43]

As for the subsection (b)-nonclaim period, Defendants contend Plaintiff received actual notice on the following dates: 1) June 2, 2016 or June 8, 2016, when Wiemers first published the Notice to Creditors; 2) November 29, 2016, when Defendants filed their answers, asserted K.S.A. § 59-2239 as an affirmative defense, and stated that any claims against the Estate were barred; and/or 3) February 13, 2017, when Defendants served him with hardcopies of the published Notice to Creditors as part of their supplemental Rule 26(a)(1) disclosures. Plaintiff argues that none of these events constitute actual notice. The Court agrees.

The parties do not dispute that Plaintiff was a known creditor. In *In re Estate of Powell*,[44] the Kansas Court of Appeals succinctly explained how the time period in K.S.A. § 59-2239 applies to a known creditor:

> In simpler terms, the time period for filing a demand against an estate expires either 4 months after publication notice or 30 days after actual notice, whichever comes later. K.S.A. 59–2239(1). For that reason, the nonclaim statute is essentially "a special statute of limitations" that applies to almost all claims against an estate. *In re Estate of Reynolds*, 266 Kan. 449, Syl. ¶ 3, 970 P.2d 537 (1998). However, special rules apply if the creditor is known or reasonably ascertainable. Specifically, failure to provide one of those creditors with notice of the 4–month time period in K.S.A. 59–2239(1)(a) "will not bar the claim until actual notice is given" unless the creditor already had actual knowledge of the time limit. 266 Kan. 449, Syl. ¶ 6. In other words, the 4–month time limit is the default for all claims, but a special, second time period applies to known or reasonably ascertainable creditors who receive no notice of that period and must instead rely on actual notice. *See* 266 Kan. at 460.[45]

---

[43] October 2, 2016 falls on a Sunday, thus "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." K.S.A. § 60-206(1)(1)(C).

[44] Case No. 113,839, 2016 WL 1719842 (Kan. Ct. App. Apr. 29, 2016).

[45] *Id.* at *2.

Because there is no evidence in the record indicating that Plaintiff saw the Notice to Creditors in either the *Kansas City Star* or the *Miami County Republic*, the first publication dates did not commence the subsection (b)-nonclaim period.

Defendants' affirmative defense also did not start the subsection (b)-clock. In *Reynolds*, the parties conceded no "Notice to Creditors" was mailed to the creditor, nor was the nonclaim statute drawn to the creditor's attention by the estate's executor prior to the expiration of the time allowed for filing of claims against the estate.[46] The Kansas Supreme Court ("KSC") held the creditor's claim was not time barred, stating:

> Here, the record is void of any evidence that Marine was ever notified that it had 4 months to file a claim. Clearly, Marine was notified years before it filed anything against the estate that UMB was not going to pay a debt owed by the decedent because Marine had not filed a claim in the estate within 4 months as set forth in the publication notice. The fact that Marine knew UMB was refusing to pay the claim on the grounds that the nonclaim statute had run is not the same as giving notice of a date when the nonclaim statute will bar the claim. We hold that a known or reasonably ascertainable creditor of an estate must receive notice that is reasonably calculated under the circumstances to apprise an interested party of the pendency of the action and afford the party an opportunity to present its claim. *See Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Notice of the 4–month statute of limitations is an integral part of the notice requirement. Failure to give a known creditor notice of the statute of limitations, in the absence of the creditor having actual knowledge of the statutory period under the nonclaim statute, will not bar the claim until actual notice is given to the known or reasonably ascertainable creditor.[47]

Similarly, in this case, Defendants asserted their affirmative defense on November 29, 2016, after the subsection (a)-nonclaim period expired. Additionally, although Defendants recited Kansas' nonclaim statute in their Affirmative Defense, they did not provide "a date when the nonclaim statute will bar the claim" or provided dates that would allow Plaintiff to calculate the

---

[46] *In re Estate of Reynolds*, 970 P.2d 537, 540 (Kan. 1998).

[47] *Id*. at 545.

13

limitations period. Defendants' affirmative defense thus did not provide Plaintiff with actual notice.

K.S.A. § 59-2236(b) states: "Actual notice . . . may include, but not be limited to, mailing a copy of the published notice, by first class mail, to creditors . . . ." In *Reynolds*, however, the KSC held that "the notice must *be reasonably calculated under the circumstances to apprise an interested party of the pendency of the action and afford the party an opportunity to present its claim.*"[48] "[W]hen notice is a person's due, process which is a mere gesture is not due process."[49] Although Defendants provided Plaintiff a copy of the published notice, this was a part of Defendants' duties under Fed. R Civ. P. 26(a) in this case and was buried within a volume of discovery. Under these circumstances, the Court finds it was not reasonably calculated to apprise Plaintiff of his rights in the Probate Case. The discovery production thus did not provide Plaintiff with actual notice. The subsection (b)-nonclaim period therefore has not commenced. Accordingly, Plaintiff's claims against the Estate are not barred.

### C. Promissory Estoppel Claim

Promissory estoppel requires "(1) [t]he promisor reasonably expected the promisee to act in reliance on the promise, (2) the promisee acted as could reasonably be expected in relying on the promise, and (3) a refusal of the court to enforce the promise would sanction the perpetration of fraud or result in other injustice."[50] "Promissory estoppel commonly applies when a promise reasonably induces a predictable sort of action but without the more formal mutual consideration found in contracts."[51] Defendants argue they are entitled to summary judgment for lack of

---

[48] *Id.* (italics added) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

[49] *Mullane*, 339 U.S. at 315.

[50] *Mohr v. State Bank of Stanley*, 770 P.2d 466, 481 (1989).

[51] *Bouton v. Byers*, 321 P.3d 780, 787 (Kan. Ct. App. 2014).

reasonable or detrimental reliance because Plaintiff extended the loans before Tyghe allegedly made promises to repay the loans with life insurance proceeds.  Plaintiff counters that he forebore from formally seeking an interest in the life insurance proceeds or filing a lawsuit because Tyghe, his friend and colleague (both Plaintiff and Tyghe were doctors), who had always paid his debt, promised to make him financially whole with life insurance proceeds.[52]  Plaintiff argues summary judgment is inappropriate because reasonableness is a question of fact that should not be decided on a cold summary judgment record.

In Kansas, "[f]orbearance to sue can be good consideration for a promise, regardless of the actual validity of the claim, if the one who forbears has a reasonable and sincere belief in its validity."[53]  Unless the claim is obviously invalid, worthless, or frivolous, forbearance from prosecution is sufficient consideration.[54]  However, "[m]ere forbearance from suit or delay in collection of payments without an agreement to do so is not legal consideration."[55]

Plaintiff offers no argument or evidence to support Karin was involved in making any promises to repay the loans with Tyghe's life insurance proceeds.  The Court therefore grants Karin summary judgment on the promissory estoppel claim.

Plaintiff refers to an email string and his own affidavit to establish he acted reasonably in relying upon Tyghe's promise.  He argues an agreement to forbear may be implied because: 1) Tyghe was his friend and respected colleague (both Plaintiff and Tyghe were doctors); 2) Tyghe had always paid his debts; 3) Tyghe promised to make Plaintiff financially whole with

---

[52] Doc. 47-1, Affidavit of Plaintiff, ¶¶ 12–13.

[53] *Schiffelbein v. Sisters of Charity of Leavenworth*, 374 P.2d 42, 45 (Kan. 1962).

[54] *State ex rel. Ludwick v. Bryant*, 697 P.2d 858, 862 (Kan. 1985) (citing *Snuffer v. Westbrook*, 8 P.2d 950, 951(Kan. 1932)).

[55] *Master Mortg. Inv. Fund, Inc. v. Chicago Title Co.*, 812 F. Supp. 194, 196–97 (D. Kan. 1993), aff'd sub nom. *Master Mortg. Inv. Fund, Inc. v. Chicago Title Ins. Co.*, 34 F.3d 1076 (10th Cir. 1994).

15

life insurance proceeds, and 4) Plaintiff forbore from formally seeking an interest in the insurance proceeds or filing a lawsuit during Tyghe's lifetime. Although a trier of fact could construe several statements by Tyghe in the email string as an implied promise to repay the loans with life insurance proceeds,[56] Plaintiff fails to refer the Court to any evidence to establish that Tyghe expressly or impliedly, requested Plaintiff to forbear in exchange for the life insurance proceeds. There is also no evidence establishing that Plaintiff agreed to forbear. The fact that Plaintiff did forbear from suit during Tyghe's lifetime does not mean he agreed to forebear.[57] Because there is no evidence of an agreement to forbear from suit, the Court grants Defendants summary judgment on the promissory estoppel claim.

## IV.     Conclusion

Karin is not entitled to summary judgment on the breach of contract claim because a genuine issue of material fact exists as to the validity of her signature. Plaintiff's claims against the Estate are not barred because he did not receive actual notice of the bar date. The breach of contract claim against the Estate thus survives summary judgment. Defendants are entitled to summary judgment on the promissory estoppel claim because there is no evidence of an agreement to forbear from suit.

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion for Summary Judgment (Doc. 40) is GRANTED IN PART and DENIED in PART as set forth above.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike (Doc. 52) is DENIED as moot.

---

[56] Doc. 42-11 at 1–2 ("In reality, I'm most concerned for my family because if I die my life insurance will cover all of you guys but will leave less for [Karin] and the kids;" 2) "in the event that I [die], the money is there for repayment;" and 3) "things might work themselves out naturally, though I'm going to keep fighting.").

[57] *Federal Compress & Warehouse Co. v. Hall*, 189 S.W.2d 922, 925 (Ark. 1945) (stating that "mere forbearance from exercising a legal right, without any request to forbear, or circumstances from which an agreement to forbear may be implied, is not a consideration which will support a promise.").

**IT IS SO ORDERED.**

Dated: January 3, 2018

                                            S/ Julie A. Robinson
                                            JULIE A. ROBINSON
                                            UNITED STATES DISTRICT JUDGE